ERNEST J. TAMARY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Tamary v. Commissioner
Docket No. 4856-72.
United States Tax Court
T.C. Memo 1974-35; 1974 Tax Ct. Memo LEXIS 283; 33 T.C.M. (CCH) 166; T.C.M. (RIA) 74035; February 6, 1974, Filed. *283 Held, (1) petitioner not entitled to dependency exemption for his grandmother; (2) petitioner does not qualify as a "head of household"; and (3) amount of charitable contributions determined. Ernest J. Tamary, pro se.
Donald K. Cook, for the respondent. IRWIN
MEMORANDUM FINDINGS OF FACT AND OPINION
IRWIN, Judge: Respondent determined a deficiency of $1,983.03 in the income tax of petitioner for the taxable year 1969. The following issues are presented for our determination: (1) whether petitioner is entitled to claim a dependency exemption for his grandmother for the taxable year 1969; (2) if so, whether petitioner also qualifies as a "head of household" for such year; and (3) whether petitioner has substantiated charitable contributions for 1969 in excess of $545.20. 2 FINDINGS OF FACT
Some of the facts have been stipulated and the stipulation of facts, together with the exhibits attached thereto, are found accordingly. Petitioner Ernest J. Tamary is an unmarried individual who resided in Rochester, N.Y., at the time of the filing of his petition with this Court. For the taxable year 1969 petitioner also resided in Rochester and for that year filed his individual Federal income *284 tax return with the district director of internal revenue, Buffalo, N.Y.
On his 1969 return petitioner claimed Selma Imberman, his grandmother, as a dependent and filed as a "head of household."
During 1969 Selma Imberman resided with her husband, Max Imberman, in Bronx, N.Y., and for that year they filed a joint Federal income tax return reporting a gross income of $2,775.87. This amount consisted of $2,044.98 which was the net profit of Max's wholesale business and $730.89 in interest. The return indicates that the interest was the joint income of Max and Selma. Max and Selma also reported a capital loss of $924.62 resulting from the sale of stock and deducted the full amount from their gross income, leaving an adjusted gross income of $1,851.25. The tax tables indicated that no income tax was due with respect to this income. The return, however, indicated that there was a 3 self-employment tax due in the amount of $141.10 for the year as a result of Max's self-employment. Both Max and Selma were over age 65 and Selma's occupation was listed as housewife. Selma received approximately $970 in Social Security Benefits for 1969.
As to Selma's expenses for 1969, petitioner estimated *285 that they were as follows: rent
$ 860
utilities
196
telephone
180
domestic help
180
food
830
medicine and vitamins
285
clothing
144
cleaning and laundry
160
taxis
290
total
$3,125
This was in part substantiated by the introduction into evidence of the receipt part of Selma's checkbook covering the dates November 1969 through June 24, 1970. Selma was quite elderly and petitioner found it difficult to determine actual expenditures and receipts for the year.
In 1969 petitioner gave his mother a check for $1,700. This check, dated January 29, 1969, was introduced into evidence and bore the notation that it was for the support of Selma. Neither petitioner's mother nor his grandmother testified and no evidence was presented indicating that the check in fact was used to support Selma.
On petitioner's 1969 return he also claimed the following 4 charitable contributions: Organization
Amount Mizrachi Women's Organization of America
$1,245.00
Mt. Eden Center
385.00
Rochester Community Chest
55.20
Cong. Beth Haknesses Hachodosh
252.00
United Jewish Appeal
28.00
Young Israel of Flatbush
15.00
Hillel Foundation U of R
25.00
Kollel America
18.00
Rabbi A. Teitelbaum
10.00
Free Loan Society
5.00
Cong. Mahazekei Hatorah
20.00
Yeshiva S. R. Hirsh
10.00
Hospital for Chronic Diseases
5.00
General Hospital Bikur Cholim
5.00
Dov Bar Torah Fund
3.00
Poor Box (weekly contribution of $7.50)
390.00
Other small contributions (less than $5each)
200.00
Total
[1] *286 $2,671.20
It has been stipulated that petitioner made the following charitable contributions: Organization
Amount Mizrachi Women's Organization
$201.00
Beth Haknesses Hachodosh
169.00
Mahazekei Hatorah
20.00
Mt. Eden Center
18.00
Hillel Foundation
25.00
Young Israel of Flatbush
15.00
Kollel America
18.00
Community Chest
55.20
Total
$521.20
[2]
Since respondent has allowed $545.20 of the deductions, 5 the substantiation of the amount in excess of $545.20 is in dispute. [3]
To substantiate the claimed deductions, petitioner introduced into evidence the following: (1) a letter from the treasurer of the Mizrachi Women's Organization stating that the Tamary Family contributed $1,245 for 1969 and that this was credited to petitioner; (2) a letter from the *287 president of the Mt. Eden Center stating that "[the] Tamary Family Account in our books reveal that their contributions" totaled $385 for 1969 and that these contributions were credited to petitioner; (3) ticket stubs showing contributions to the Mizrachi Women's Organization; and (4) a letter from Rabbi Aaron Teitelbaum thanking petitioner for a check of $10. No other relevant evidence was presented with respect to any of the other contributions.
OPINION
Petitioner first contends that he is entitled to claim a dependency exemption for his grandmother, Selma Imberman, under section 151(e). [4] However, section 151(e) (2) provides as follows:
(2) Exemption denied in case of certain married dependents. - No exemption shall be allowed under this subsection for any dependent who has made a joint return with his spouse under section 6013 for the taxable year beginning in the calendar year in which the taxable year of the taxpayer begins.
Thus even assuming arguendo that Selma otherwise qualifies as a dependent under section 152, petitioner still cannot prevail on this point since Max and *288 Selma filed a joint return for 1969. [5] Petitioner, however, argues that the filing of the joint return was inadvertent, [6] *289 but the fact 7 remains that a joint return was filed. We also note that even if the filing of the joint return was not intended, a separate return would have had to be filed prior to the expiration of the time for filing the return to be effective. Section 1.6013-1(a) (1), Income Tax Regs. This was not done. Finally we note that Rev. Rul. 54-567, 1954-2 C.B. 108 (affirmed by Rev. Rul. 65-34, 1965-1 C.B. 86) is likewise of no assistance to petitioner. [7] Since petitioner is not entitled to a dependency exemption for his grandmother he cannot qualify as a "head of household" under section 1(b) (2). [8] *290 *291 In addition petitioner cannot prevail 8 on this point since it has not been established that he maintained "as his home" a household which constituted the principal place of abode for his grandmother during 1969. Finally, we have the issue of the charitable contributions. We note first that the burden of proof is on petitioner, not respondent. Rule 142(a), Rules of Practice and Procedure, United States Tax Court. The primary issue on this point is whether the letters from Mizrachi Women's Organization, Mt. Eden Center and Rabbi Aaron Teitelbaum adequately substantiate the deductions claimed by petitioner with respect to these organizations.
We are of the opinion that petitioner has not adequately explained the ambiguity contained in the letters from the Mizrachi Women's Organization and the Mt. Eden Center wherein the total contributions are in the name of the "Tamary Family" although "credited" to petitioner. In addition we find that 9 it *292 has not been adequately demonstrated that the ticket stubs introduced into evidence (which bore no indication as to donor) represented petitioner's contributions to the Mizrachi Women's Organization. We, therefore, are of the opinion that petitioner has not met his burden of substantiating the amount of these contributions over and above what respondent has allowed. [9] With respect to the letter from Rabbi Teitelbaum, we believe that this $10 donation was for the synagogue and not a personal gift to the Rabbi. Therefore, the deduction of this contribution should have been allowed.
With respect to the other claimed deductions, petitioner has not offered any competent evidence to sustain the amounts claimed. We, therefore, must sustain respondent's *293 determination.
To reflect the foregoing,
Decision will be entered under Rule 155. Footnotes
1. Petitioner on his 1969 return claimed a total charitable deduction of $2,716.20. The discrepancy is due to petitioner's mathematical error in totaling the contributions listed.
2. All of these contributions were substantiated by canceled checks and/or receipts.↩
3. While it has been stipulated that petitioner made contributions totaling $521.20, respondent in his statutory notice of deficiency allowed petitioner $545.20. No explanation was presented to account for this $24 discrepancy.↩
4. All statutory references are to the Internal Revenue Code of 1954 as in effect during the year in issue. ↩
5. Since we find that petitioner is not entitled to the dependency exemption because of section 151(e) (2), there is no need to determine whether or not petitioner provided over half of the support of his grandmother and whether or not the grandmother had gross income less than the amount specified under section 151(e) (1) (A) for the year 1969.↩
6. At trial petitioner testified that he had an agreement with Max Imberman whereby he (petitioner) would supply $1,700 as supplementary support to Selma and that this would be considered as her entire support. It was further alleged that if petitioner supplied the $1,700, Max would not claim Selma as a dependent. Petitioner claims that Max anticipated a gross income between $2,000 and $2,500 and that this would not be enough to support the two of them. It is for this reason that petitioner was willing to assist in the support of his grandmother. In addition it is claimed that the deductions would be of little use to Max. Max, however, had a heart attack in early 1970, and petitioner contends that the joint return was inadvertently filed by an accountant. The joint return, however, gives no indication that an accountant prepared the return. Max died prior to trial and no evidence, except petitioner's testimony, was offered to prove the existence of the agreement.
7. This ruling in effect provides an exception to section 151(e) (2) when section 6012 does not require that a return be filed.↩
8. Respondent has referred to section 2(b). While section 2(b) of the current Code provides for the definition of head of household, during the year in issue (1969) the definition is contained in section 1(b) (2), not section 2(b). Section 1(b) (2) provides as follows:
(2) Definition of head of household. - For purposes of this subtitle, an individual shall be considered a head of a household if, and only if, such individual is not married at the close of his taxable year, is not a surviving spouse (as defined in section 2(b)), and either - (A) maintains as his home a household which constitutes for such taxable year the principal place of abode, as a member of such household, of - (i) a son, stepson, daughter, or step-daughter of the taxpayer, or a descendant of a son or daughter of the taxpayer, but if such son, stepson, daughter, stepdaughter, or descendant is married at the close of the taxpayer's taxable year, only if the taxpayer is entitled to a deduction for the taxable year for such person under section 151, or
(ii) any other person who is a dependent of the taxpayer, if the taxpayer is entitled to a deduction for the taxable year for such person under section 151, or
(B) maintains a household which constitutes for such taxable year the principal place of abode of the father or mother of the taxpayer, if the taxpayer is entitled to a deduction for the taxable year for such father or mother under section 151.
For purposes of this paragraph and of section 2(b) (1) (B), an individual shall be considered as maintaining a household only if over half of the cost of maintaining the household during the taxable year is furnished by such individual.↩
9. We are at a loss to understand why petitioner gave up the safe course of writing checks for part of the contributions to these same organizations (which contributions respondent allowed) and did not do so for the remaining amounts claimed. In attempting to explain this inconsistency petitioner testified that some of these contributions were given with his mother acting as an intermediary but no evidence was presented to substantiate this.↩